1
2
3
4
5
6
7
8
9
10

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA

11
12
13
14
15
16
17

| | |
|---|---|
| A.S.G., by and through her Guardian ad Litem April Zachry, | Case No. CV 16-5465 JC |
| Plaintiff, | MEMORANDUM OPINION |
| v. | |
| NANCY A. BERRYHILL, Acting Commissioner of Social Security,[1] | |
| Defendant. | |

18  **I.    SUMMARY**

19       On July 21, 2016, April Zachry ("plaintiff's mother"), as the Guardian Ad

20  Litem for minor child A.S.G. ("plaintiff"), filed a Complaint seeking review of the

21  Commissioner of Social Security's denial of plaintiff's application for benefits.

22  The parties have consented to proceed before the undersigned United States

23  Magistrate Judge.

24       This matter is before the Court on the parties' cross motions for summary

25  judgment, respectively ("Plaintiff's Motion") and ("Defendant's Motion").  The

26
27
28

---

[1]Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Nancy A. Berryhill is hereby substituted for Commissioner Carolyn W. Colvin as the defendant in this action.

1  Court has taken both motions under submission without oral argument.  See Fed.

2  R. Civ. P. 78; L.R. 7-15; July 29, 2016 Case Management Order ¶ 5.

3      Based on the record as a whole and the applicable law, the decision of the

4  Commissioner is AFFIRMED.  The findings of the Administrative Law Judge

5  ("ALJ") are supported by substantial evidence and are free from material error.

6  **II.   BACKGROUND AND SUMMARY OF ADMINISTRATIVE**

7        **DECISION**

8      On March 23, 2012, plaintiff's mother, on behalf of plaintiff, filed an

9  application for Supplemental Security Income alleging disability beginning on

10  November 16, 2011, due to epilepsy and seizures.  (Administrative Record ("AR")

11  12, 154, 185).  The ALJ examined the medical record and heard testimony from

12  plaintiff (who was represented by counsel) and plaintiff's mother on January 30,

13  2014.  (AR 35-68).

14     On March 14, 2014, the ALJ determined that plaintiff was not disabled

15  through the date of the decision.  (AR 12-26).  Specifically, the ALJ found:

16  (1) plaintiff has not engaged in substantial gainful activity since March 23, 2012,

17  the application date (AR 15); (2) plaintiff suffers from the following severe

18  impairments:  seizures and migraine headaches (AR 15); (3) plaintiff does not

19  have an impairment or combination of impairments that meets or medically equals

20  a listed impairment (AR 15); (3) plaintiff does not have an impairment or

21  combination of impairments that functionally equals the severity of the listings[2]

22

23  _____

24     [2]With respect to the six "functional equivalent domains," the ALJ found that plaintiff
   does not have an impairment or combination of impairments that results in either "marked"
25  limitations in two domains of functioning, or "extreme" limitation in one domain of functioning.
   (AR 26).  More specifically, the ALJ found that plaintiff's impairments cause (1) no limitations
26  in the domains of acquiring and using information, and attending and completing tasks; (2) less
   than marked limitations in the domains of interacting and relating with others, moving about and
27  manipulating objects, and caring for yourself; and (3) marked limitation in the health and
   physical well being domain.  (AR 19-26).
28

(AR 15); and (4) plaintiff's statements regarding the intensity, persistence, and limiting effects of subjective symptoms were not entirely credible (AR 17).

On November 24, 2015, the Appeals Council denied plaintiff's application for review.  (AR 5).

## III.   APPLICABLE LEGAL STANDARDS

### A.   Childhood Disability Claims – Sequential Evaluation Process

To qualify for childhood disability benefits an "individual under the age of 18" (*i.e.*, "child" or "claimant") must establish that he or she has "a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 1382c(a)(3)(C)(i); 20 C.F.R. §§ 416.902, 416.906; see Howard ex rel. Wolff v. Barnhart, 341 F.3d 1006, 1013 (9th Cir. 2003) (citation omitted).

In assessing whether a child is disabled, an ALJ is required to use the following three-step sequential evaluation process:

(1)   Is the child engaged in substantial gainful activity?  If so, the child is not disabled.  If not, proceed to step two.

(2)   Does the child have a sufficiently severe medically determinable impairment or combination of impairments (collectively "impairment(s)")?  If not, the child is not disabled. If so, proceed to step three.

(3)   Do(es) the child's impairment(s) meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1 ("listings"), or functionally equal the listings (*i.e.*, is generally of "listing-level severity")?  If so, and if the impairment(s) satisfy the duration requirement, the child is disabled.  If not, the child is not disabled.

3

1  20 C.F.R. §§ 416.924(a), 416.926a; <u>see</u> Social Security Ruling ("SSR") 09-1p,
2  2009 WL 396031, *1.

3      **B.      Standard of Review**

4          Pursuant to 42 U.S.C. section 405(g), a court may set aside a denial of
5  benefits only if it is not supported by substantial evidence or if it is based on legal
6  error.  <u>Robbins v. Social Security Administration</u>, 466 F.3d 880, 882 (9th Cir.
7  2006) (citing <u>Flaten v. Secretary of Health & Human Services</u>, 44 F.3d 1453, 1457
8  (9th Cir. 1995)).

9          Substantial evidence is "such relevant evidence as a reasonable mind might
10  accept as adequate to support a conclusion." <u>Richardson v. Perales</u>, 402 U.S. 389,
11  401 (1971) (citations and quotations omitted).  It is more than a mere scintilla but
12  less than a preponderance.  <u>Robbins</u>, 466 F.3d at 882 (citing <u>Young v. Sullivan</u>,
13  911 F.2d 180, 183 (9th Cir. 1990)).  To determine whether substantial evidence
14  supports a finding, a court must "'consider the record as a whole, weighing both
15  evidence that supports and evidence that detracts from the [Commissioner's]
16  conclusion.'" <u>Aukland v. Massanari</u>, 257 F.3d 1033, 1035 (9th Cir. 2001)
17  (quoting <u>Penny v. Sullivan</u>, 2 F.3d 953, 956 (9th Cir. 1993)).

18          An ALJ's decision to deny benefits must be upheld if the evidence could
19  reasonably support either affirming or reversing the decision.  <u>Robbins</u>, 466 F.3d
20  at 882 (citing <u>Flaten</u>, 44 F.3d at 1457).

21  **IV.   DISCUSSION**

22          Plaintiff essentially contends that a reversal or remand is warranted because
23  the ALJ failed to find that plaintiff's "frequent seizures and headaches"
24  functionally equaled the listings.  (Plaintiff's Motion at 5-6).  The Court disagrees.

25      **A.      Pertinent Law**

26          A child's impairment(s) "functionally equal[] the listings" if the
27  impairment(s) cause limitations of "listing-level severity."  20 C.F.R.
28  § 416.926a(d).  To determine whether impairment-related limitations are of

4

"listing-level severity," an ALJ must evaluate the child's functioning in six broad "domains," namely (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for yourself; and (6) health and physical well-being (collectively "domains"). 20 C.F.R. § 416.926a(b)(1)(i)-(vi). A child's impairment(s) are of listing-level severity if he or she has "marked" limitations in two of the domains, or an "extreme" limitation in one domain. 20 C.F.R. § 416.926a(a), (d). In general, limitation in a domain is "marked" when the child's impairment(s) "interfere[] seriously with [his or her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(2). Limitation is "extreme" when the child's impairment(s) "interfere[] very seriously with [his or her] ability to independently initiate, sustain, or complete activities." 20 C.F.R. § 416.926a(e)(3) (emphasis added). "Extreme" limitation is the rating given to the "worst limitations" in a domain. Id.

Unlike the five other domains, the domain of health and physical well-being (alternatively referred to as the "sixth domain") does not involve a child's typical development and functioning, but instead "addresses how such things as recurrent illness, the side effects of medication, and the need for ongoing treatment affect a child's body. . . ." SSR 09-8p, 2009 WL 396030, *2. Accordingly, a child has a "marked" limitation in the "[h]ealth and physical well-being" domain when the child is "frequently ill" because of impairment(s) or has "frequent exacerbations" of the impairment(s) which result in "significant, documented symptoms or signs." 20 C.F.R. § 416.926a(e)(2)(iv). "[F]requent," for purposes of this domain, means "episodes of illness or exacerbations that occur on an average of 3 times a year, or once every 4 months, each lasting 2 weeks or more[,]" or "episodes that occur more often than 3 times in a year or once every 4 months but do not last for 2 weeks, or occur less often than an average of 3 times a year or once every 4 months but last longer than 2 weeks, if the overall effect (based on the length or

frequency of the episode(s)) is equivalent in severity." 20 C.F.R.
§ 416.926a(e)(2)(iv).

A child has an "extreme" limitation in the sixth domain if the child has impairment-related episodes of illness or exacerbation which are "substantially in excess of the requirements for showing a 'marked' limitation. . . ." 20 C.F.R. § 416.926a(e)(3)(iv). In most cases, a limitation rated as "extreme" under the sixth domain "should meet or medically equal the requirements of a listing. . . ." 20 C.F.R. § 416.926a(e)(3)(iv).

### B.   Analysis

Here, substantial evidence supports the ALJ's determination that plaintiff had only "marked" limitation in the sixth domain of health and physical well-being. More specifically, the record supports an inference that plaintiff had episodes of illness or exacerbation of her impairment(s) that lasted less than two weeks but occurred more often than three times in a year or once every four months and had an overall effect on plaintiff that was equivalent in severity to more extended episodes.

For example, as the ALJ noted, the medical records reflect that in 2011 plaintiff had one or two seizures on November 16, seizures on November 17 and November 20, and a seizure in December, and that plaintiff was seen at a hospital emergency room for seizures on November 16. (AR 25, 224, 261, 267, 271, 306, 308, 364, 366). In addition, on July 2, 2012, plaintiff had a "small seizure" and Dr. Lee increased plaintiff's anti-seizure medication. (AR 25, 353-54). Nonetheless, treatment notes from March, April, and September 2012 reflect that plaintiff had no seizures. (AR 257, 258, 264, 348, 355-57).

As the ALJ also noted, the treatment records reflect continuing treatment for the seizures. (AR 26) (citing Exhibits 2F p. 22 [AR 261], 6F [AR 328-34], 10F [AR 370-76, 12F [AR 385-406]). Also, on March 26, 2012, plaintiff's mother called Dr. Yu-En Lee ("Dr. Lee"), plaintiff's treating physician, and requested a

"doctor's note" for school stating that plaintiff "cannot perform any strenuous activity as it causes [plaintiff] to have seizures." (AR 266). Plaintiff's school records reflect a telephone message from plaintiff's mother dated September 19, 2013, stating that plaintiff was on seizure medication and was being treated for seizures, and therefore was restricted from participating in outdoor physical education when the temperature is greater than 95 degrees. (AR 374). Plaintiff also had an individual healthcare plan in place at her school in case of a seizure. (AR 328, 331, 334, 370, 372).

In addition, a September 3, 2013 treatment note indicates that plaintiff had headaches twice a week that were associated with excess sleep, sleep deprivation, physical activity and sunlight or strobe light, and were relieved by plaintiff lying down, going to sleep, going home from school and medication. (AR 379). Plaintiff's school records reflect that plaintiff missed classes due to headaches on September 14, 2011, January 18, 2012, February 2, 2012, February 23, 2012, April 4, 2012, and April 16, 2012, and also missed a few other days of school due to other health issues. (AR 332-33). Nonetheless, as the ALJ noted, despite plaintiff's multiple absences, a 7th grade report card from Plute Middle School documented that in 2013 plaintiff earned grades of A in Homeroom and Citizenship, B in Social Science, B+ in Avid 7, C in Mathematics, B- in Math Supp., C in Language Arts, D in physical education, and "no mark" in Science 7 (from which plaintiff was absent six times). (AR 367-68).

Moreover, as the ALJ suggested (AR 25), related findings on objective medical testing of plaintiff were mostly within normal limits. For instance, the report of a December 2, 2011 Initial Neurology consultation reflects, in pertinent part, that during the neurological examination plaintiff was awake and alert, her head was normocephalic, cranial nerves II through XII were normal, motor and sensory examinations were normal, deep tendon reflexes were 1+ and the Babinski's was "down-going." (AR 366). A treatment note from January 13,

7

2012 reflects that plaintiff had less headaches.  (AR 261).  The findings from a February 16, 2012 EEG were within normal limits and plaintiff was awake, alert and oriented times three.  (AR 278).  The report of a September 3, 2013 neurological examination of plaintiff also reflects objective medical findings that were generally within normal limits.  (AR 379-83).

To the extent plaintiff contends that the record documents impairment-related episodes of a frequency "substantially in excess" of that required to show only a "marked" limitation – and thus plaintiff actually had "extreme" limitation in the sixth domain (Plaintiff's Motion at 6) – this Court will not second guess the ALJ's reasonable determination to the contrary, even if the record evidence could give rise to inferences more favorable to plaintiff.  See Robbins, 466 F.3d at 882 (citation omitted).

Accordingly, a remand or reversal on this basis is not warranted.

**V.    CONCLUSION**

For the foregoing reasons, the decision of the Commissioner of Social Security is affirmed.

LET JUDGMENT BE ENTERED ACCORDINGLY.

DATED:   March 13, 2017

_____
/s/
Honorable Jacqueline Chooljian
UNITED STATES MAGISTRATE JUDGE

8